IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| TALITHA SOGHOIAN, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:12-cv-1232-LO-TRJ |
| | ) | |
| CAROLYN W. COLVIN,[1] Acting Commissioner, Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff Talitha Soghoian ("Ms. Soghoian") seeks judicial review of the final decision of defendant, the Acting Commissioner of the Social Security Administration ("Commissioner"). The Commissioner found that Ms. Soghoian was not "disabled" and therefore denied Ms. Soghoian disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. R. at 16-33. Briefly stated, plaintiff asserts that that the residual functional capacity ("RFC") assessment of the Administrative Law Judge ("ALJ") was in error because the ALJ did not provide a sufficient explanation for his RFC determination and erroneously assessed plaintiff's credibility and her subjective complaints about pain. Defendant contends that the ALJ's determination that plaintiff was not disabled was supported by substantial evidence in the record and a proper residual functional capacity

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 13, 2013. Carolyn W. Colvin should be substituted for Michael J. Astrue as defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and no further action need be taken in accordance with section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

analysis.

This action has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. §§ 636 (b)(1)(B), Fed. R. Civ. Pro. 72(b), and Local Civil Rule 72. Having carefully reviewed parties' briefs and the administrative record,[2] and for the reasons that follow, the undersigned recommends that Ms. Soghoian's Motion for Summary Judgment, No. 15, be denied; Defendant's Motion for Summary Judgment, No. 11, be granted; and the final decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

Ms. Soghoian filed an application for Social Security disability insurance benefits ("DIB") on June 24, 2009. R. at 19;144.[3] She alleged a disability onset date of May 10, 2004 on the basis of a pancreatic tumor, chronic left side body/abdominal pain and breast cancer. R. at 144; 148. Plaintiff's breast cancer, which occurred in February 2008 and was surgically removed, was not relevant to her disability determination because it occurred after plaintiff's date last insured, December 31, 2007.[4] R. at 48; 74. The state agency denied plaintiff's claim at the initial and reconsideration levels. R. at 71-78; 83-94. Thereafter, plaintiff requested a hearing before an ALJ. R. at 19; 95. An administrative hearing was held on June 30, 2011 during which both Ms. Soghoian and a vocational expert ("VE") testified. R. at 34-68.

On July 26, 2011, the ALJ issued a decision denying Ms. Soghoian's claim based on his finding that she was not disabled between the relevant time period, May 10, 2004 through December 31, 2007—plaintiff's alleged onset date through her date last insured. R. at 19-29.

---

[2] The administrative record was filed under seal April 12, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1). No. 6.
[3] "R." refers to the certified administrative record.
[4] In order to qualify for disability insurance benefits, one must be disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) and (C). The last date a person meets the insured requirements is commonly referred to as the date last insured. Ms. Soghoian's date last insured was December 31, 2007. R. at 19.

2

The Appeals Council denied plaintiff's request for review on September 1, 2012, therefore making the ALJ's decision the final decision of the Commissioner. R. at 1-4; 15; *see* 20 C.F.R. § 404.981. Plaintiff timely filed a complaint for judicial review of the Commissioner's decision on November 2, 2012. No. 1. The Commissioner filed an answer to the complaint on April 12, 2013, No. 5, and the parties filed cross motions for summary judgment, Nos. 11 and 15. This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Richardson v. Perales*, 403 U.S. 389, 401 (1971)). Substantial evidence, as the Fourth Circuit has stated, is "evidence which a reasonable mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays*, 907 F.2d at 1453 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court must examine the record as a whole. The court may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Maestro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). If the ALJ made specific credibility determinations, supported by a discussion of specific evidence and an evaluation of plaintiff's testimony, then the ALJ's credibility findings receive great weight. *See Shively v. Heckler*, 739 F.2d 987, 989

(4th Cir. 1984). If the ALJ's findings as to any fact are supported by substantial evidence, they are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Furthermore, the ALJ as the trier of fact is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine claimant's residual functional capacity. *Hays*, 907 F.2d at 1456-57. Overall, if the ALJ's findings and resolution of conflicts in the evidence are supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebreeze*, 368 F.2d 640,642 (4th Cir. 1966). As further discussed below, the magistrate judge concludes that each finding challenged by plaintiff is supported by substantial evidence in the record and comports with the applicable legal standards.

### III. <u>RELEVANT FACTUAL BACKGROUND</u>

At the time of the June 30, 2011 hearing, Ms. Soghoian was a 50 year old college-educated female who resided in Virginia. R. at 27. Ms. Soghoian previously worked as a senior IT specialist until June 2002, when she was laid off due to a resource reduction at her job and not because of any disabling condition. R. at 42-44; 148; 157. Plaintiff filed for disability insurance benefits on June 24, 2009, claiming disability beginning on the onset date of May 10, 2004 due to chronic left body and abdominal pain as well as breast cancer which occurred in 2008. R. at 144; 148. Ms. Soghoian was forty-two (42) years old at the time of her alleged onset date and was forty-six (46) years old at the time of her date last insured, December 31, 2007. R. at 39; 144. Since claimant was under the age of fifty (50) during the relevant period, she was considered a "younger individual" pursuant to SSA regulations.[5] R. at 27.

In late 2003, plaintiff developed lower quadrant abdominal pain and back pain on her left side and a CT scan revealed a pancreatic tumor. R. at 209; 219. On May 10, 2004, the date of

---

[5] Pursuant to SSA regulations, for "younger individuals", those under the age of 50, SSA "generally do[es] not consider that [] age will seriously affect [the individual's] ability to adjust to other work." 20 C.F.R. § 401.1563(c).

4

her alleged onset, plaintiff underwent a surgery to remove the pancreatic tumor. R. at 39; 218-19; 382-85; 307. Following the surgery, plaintiff complained to her doctors that her pain along the left-side of her abdominal and flank was intense and persistent. R. at 46; 215; 218; 284. Plaintiff sought a variety of medical treatment and medication for her pain including physical therapy, pain management, epidural steroid injections and lysis of abdominal adhesions. R. at 212-19; 232-43; 285-89; 458-72. Also, on December 21, 2006, Ms. Soghoian had the Tarlov cyst removed in attempt to mitigate her pain. R. at 345.

Plaintiff was seen by multiple physicians who conducted several physical examinations, MRIs, and diagnostic tests. R. at 212-219; 232-43. Many of the test results were unremarkable and indicated that plaintiff had a normal back, chest and abdomen during the relevant time period. R. at 209; 213; 229-31; 280-81; 304; 548-50. Plaintiff's treating physicians had noted in medical reports that claimant appeared "healthy" and alert. R. at 290; 471.

In March 2010, a state agency physician, Dr. Esther Pinder, reviewed plaintiff's medical record in connection with plaintiff's initial application and opined that plaintiff could perform a limited range of light work since her date last insured, December 31, 2007. R. at 473-81. In May 2010, another state agency physician, Dr. R.S. Kadian, reviewed plaintiff's medical record as part of her request for reconsideration. R. at 70-78. Dr. Kadian opined that plaintiff could perform a limited range of light work and found that nothing in the evidence indicated that Ms. Soghoian had any complicating residuals from the pancreatic tumor surgery. R. at 75-76. At the administrative hearing, plaintiff testified that she had back problems and intense abdominal pain as well as occasionally nausea and cramping of her legs. R. at 57-58.

During the relevant period, plaintiff lived independently between 2004 and 2007. R. at 41; 55-56. Plaintiff testified that she could perform various activities independently including

occasional driving to run errands, fixing meals, cleaning the house, and performing light exercises as part of physical therapy. R. at 41-42; 55; 56; 171-73. Despite claimant's complaints about persistent pain, Ms. Soghoian testified at the hearing that she did have improvement in her left shoulder with the help of physical therapy. R. at 63. Also, plaintiff indicated that she took medications to alleviate her pain and was learning how to handle her pain triggers. R. at 23-24; 63.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In every Social Security Disability claim analysis, the ALJ is required to first determine whether the claimant met the insured status requirement.[6] Then, the ALJ must conduct a five-step sequential evaluation to determine if the claimant is disabled and therefore eligible for disability insurance benefits. 20 C.F.R. § 416.920(a). It is this five-step process that the court examines on appeal to determine whether the correct legal standard was applied and whether the resulting decision was supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520; 416.920. The five-step disability inquiry requires a determination, in sequence, on (1) whether plaintiff is engaged in substantial gainful activity; (2) whether plaintiff has a severe impairment; (3) whether plaintiff has a severe impairment that met the requirements of a "listed" impairment; (4) plaintiff's residual functional capacity ("RFC") and ability to perform past relevant work; and (5) plaintiff's ability to perform any other work in the national economy. R. at 21-29; *See* 20 C.F.R. § 404.1520(a)(4).

In a decision dated July 26, 2011, the ALJ found that Ms. Soghoian met the last insured status requirements of the Social Security Act based on her earning records. R. at 21. To qualify for disability insurance benefits, she must prove that she became disabled prior to the expiration of her insured status which was December 31, 2007. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20

---

[6] *See* 42 U.S.C. § 423(a).

C.F.R. § 404.101(a). Accordingly, the "relevant time period" that the ALJ considered for determining disability was from May 10, 2004 through December 31, 2007—the date of claimant's alleged onset and date last insured.

After applying the five-step analysis, the ALJ concluded that Ms. Soghoian was not under a disability within the meaning of the Social Security Act during the relevant time period. R. at 29. After reviewing the record and testimony presented, the ALJ made the following five findings set forth in his decision: First, Ms. Soghoian has not engaged in substantial gainful employment during the relevant period. R. at 21. Second, she had severe impairments, a chronic back disorder and residuals of surgical removal of pancreatic cancer, but these impairments did not cause disabling limitations in the claimant's ability to perform basic work activities during the relevant period. R. at 21-22; 20 C.F.R § 404.1520(c). Third, she did not have a severe impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. Part 404. R. at 22. Fourth, she was unable to perform any past relevant work. R. at 27. Fifth, she did not have an impairment that prevented her from any substantial gainful employment because there were jobs that existed in significant numbers in the national economy that she could perform based on her RFC, age, and experience. R. at 28. Based on the five-step evaluation process, the ALJ ultimately determined that Ms. Soghoian was not under a disability from May 10, 2004 through December 31, 2007. R. at 29.

## V. ANALYSIS

Ms. Soghoian raises two issues on judicial review. The first issue is whether the ALJ erroneously assessed plaintiff's residual functional capacity ("RFC"), primarily because the ALJ failed to provide an adequate narrative discussion setting forth his rationale for plaintiff's RFC finding; and secondarily because the ALJ did not properly evaluate the opinions of the two state

agency physicians. The second issue is whether the ALJ erroneously assessed plaintiff's credibility and subjective complaints about the intensity and severity of her pain. The magistrate judge disagrees with plaintiff on both issues and finds that the ALJ's findings comport with applicable law and are supported by substantial evidence in the record.

### A. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND COMPLIES WITH APPLICABLE LEGAL STANDARDS

Ms. Soghoian first argues that the ALJ's residual functional capacity assessment is erroneous. Plaintiff's two supporting arguments will be addressed in turn.

#### 1. The ALJ's RFC determination was based on a well-reasoned narrative discussion supported by substantial record evidence.

Plaintiff argues that the ALJ failed to fully consider plaintiff's functional limitations as part of his residual functional capacity assessment and did not provide an adequate narrative discussion of her RFC. Upon review of the record, the magistrate judge disagrees with plaintiff and finds that the ALJ conducted a thorough assessment to determine plaintiff's residual functional capacity as part of the ALJ's overall disability determination. Moreover, the magistrate judge concludes that the ALJ provided a proper narrative discussion of plaintiff's RFC based on reasoned analysis grounded in substantial record evidence.

As part of the five-step disability analysis, the ALJ must first determine the claimant's residual functional capacity pursuant to 20 C.F.R. § 404.1520(e) before proceeding from step three to step four. *See* 20 C.F.R. §§ 404.1520(a)(4); 404.1545(a)(1). The residual functional capacity is a function-by-function assessment of an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" based on all the relevant evidence and claimant's impairment. Soc. Sec. Rul. ("SSR") 96-8p; 20 C.F.R. §§ 404.1520(e), 404.1545. The residual functional capacity assessment is used by the ALJ in

step four to determine if the claimant can perform her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4). In step five, the ALJ uses claimant's RFC as a factor to determine whether the claimant is able to do any other work that exists in the national economy. *Id.* Specifically, SSR 96-8p provides that "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

The magistrate judge finds that the ALJ properly conducted an RFC assessment based on a consideration of the entire record which included plaintiff's medical records, plaintiff's testimony, two State Agency physicians' evaluations, and vocational expert testimony. Contrary to what plaintiff argues, there is no rigid and particular format that the ALJ must use in order to assess plaintiff's RFC so long as the ALJ engaged in a reasoned discussion of plaintiff's functional limitations and work capacity. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that there was "no rigid requirement" that the ALJ must "refer to every piece of evidence in his decision, so long as the ALJ's decision" sufficiently allows the reviewing court to conclude that the ALJ considered claimant's medical condition as a whole); *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that the ALJ is not required to use "particular language or adhere to a particular format").

Here, the ALJ specifically references several medical records along with plaintiff's testimony and other record evidence that rationally support his findings of plaintiff's capacity for sedentary work with the stated functional limitations. The ALJ's residual functional capacity assessment is set forth in over five pages of single space narrative analysis that logically discusses the evidence the ALJ relied upon in determining plaintiff's RFC. R. at 22-27.

In reaching this assessment, the ALJ provides specific references to exhibits and

testimony that corroborated each of his limitation findings. For example, the ALJ found that plaintiff was limited to "occasional climbing, as well as crouching and squatting." R. at 22. This finding demonstrates that the ALJ's acknowledged plaintiff's testimony that "stooping and crouching bothered her" but that she was able to bend over and climb the stairs in her home with the help of a handrail. R. at 22-24; 53-54. Similarly, the ALJ found that plaintiff was limited in her ability to push, pull, grip and feel with the non-dominant left arm while retaining the ability to "lift five pounds frequently and up to ten pounds occasionally." R. at 22; 149; 284. This functional limitation is supported by substantial evidence including objective medical evidence that she had a full range of motion and plaintiff's testimony about her ability to carry groceries, drive, clean the house, and exercise, which are all cited by the ALJ in his decision. R. at 24-25; 42; 52- 56; 61.

The ALJ's finding that plaintiff could perform sedentary work with certain limitations was further supported by substantial objective medical evidence corroborating that plaintiff was relatively healthy and suffered from no disabling limitation. The ALJ's decision references plaintiff's multiple MRI reports, physical examinations, and laboratory test results from her treating physicians that reveal no signs of significant abnormalities and were largely unremarkable and normal. R. at 24-25; 212-13; 229-31; 280-81; 285-86; 298-300; 307-09; 314-16, 355-56; 372; 391; 464-65; 472; 548-51; 697. Although examination results during the relevant period revealed that plaintiff experienced tenderness in her back and chronic pain problems, she overall had a normal reflexes, motor strength and coordination. R. at 209; 212-13; 218; 285; 290; 365; 373; 458.

Additionally, plaintiff's treating providers noted in several different physical examinations that plaintiff appeared healthy, well-nourished, alert, and in "no acute distress." R.

10

at 209; 213; 290; 373; 461; 471. Moreover, plaintiff has not identified any limitation that the ALJ did not consider or any critical omission made by the ALJ to support a reviewing court's finding that the ALJ committed harmful error. *See Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (finding that claimant failed to "demonstrate prejudice by showing a significant omission from the record"). The magistrate judge therefore finds that the ALJ conducted an RFC assessment that was supported by substantial evidence and in accordance with controlling law.

**2. The ALJ's evaluation of the state agency physicians' opinions in his RFC analysis was not erroneous.**

In essence, plaintiff argues that the ALJ's RFC assessment was erroneous because the ALJ did not adopt all the limitations that were part of the state agency physicians' opinions. The magistrate judge finds that plaintiff's argument is not only difficult to follow but is fundamentally flawed. The magistrate judge finds that the ALJ did not commit error in his evaluation of the two state agency physicians' opinion as part of his residual functional capacity assessment.

Here, the ALJ's RFC assessment incorporates the opinions of two state agency medical consultants, Dr. Pinder and Dr. Kadian, who evaluated plaintiff's residual functional capacity on March 2010 and May 2010. R. at 70-78; 473-81. Both consultants similarly opined that during the relevant period, plaintiff was not disabled and could perform a limited range of light work and exertional activities. R. at 26-27; 75-78; 481. The state agency physicians' opinions were consistent with the substantial weight of the record medical evidence that reflected that plaintiff was relatively healthy, had normal motor strength, and could perform light work during the relevant period. R. at 209; 212-13; 373.

When making a RFC assessment, the ALJ is not limited to taking into consideration only

opinion evidence including state agency physician opinions but is also required to take into consideration all relevant evidence including plaintiff's testimony and other medical evidence. *See* 20 C.F.R. § 404.1527(a). Here, the magistrate judge finds that ALJ properly factored the state agency physician opinions in his RFC evaluation within the context of other relevant evidence in the record including plaintiff's testimony.

For example, the state agency physicians opined that plaintiff could "lift/carry up to twenty pounds, could frequently lift/carry up to ten pounds." R. at 27; 76-78; 475. On the other hand, plaintiff testified that she was unable to lift more than ten pounds and had shoulder pain. R. at 26; 52; 63; 284. In affording both plaintiff's testimony and the state agency physicians' opinions due weight, the ALJ found that plaintiff "retained the ability to lift five pounds frequently and up to ten pounds occasionally" which was slightly more restricted than what the state agency physicians opined. R. at 22. Accordingly, the magistrate judge finds that the ALJ properly afforded substantial weight to the state agency physicians while giving plaintiff's subjective complaints about her pain and limitations due credence which is consistent with substantial evidence in the entire record and the applicable law.

### B. THE ALJ'S CREDIBILITY DETERMINATION OF PLAINTIFF WAS NOT IN ERROR

Lastly, Ms. Soghoian argues that the ALJ's credibility determination of plaintiff was in error for two reasons: the ALJ 1) improperly required claimant to support her complaints of pain with objective evidence, and 2) overestimated plaintiff's ability to perform sustained work based on a mischaracterization of plaintiff's testimony about her daily activities. Based on an examination of the record, the magistrate judge finds that the ALJ's evaluation of plaintiff's complaints of pain and credibility was consistent with controlling regulations and was supported by substantial evidence.

It is well-established by SSA regulations and Fourth Circuit precedent that the ALJ in evaluating a claimant's subjective complaints must engage in a two-step process. *See* 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 594 (4th. Cir. 1996); *Hunter v. Sullivan*, 993, F.2d 31, 36 (4th Cir. 1992); *Mickles v. Shalala*, 29 F.3d 918, 919-20 (4th Cir. 1994). Under the first step, the ALJ must determine whether plaintiff has a medically-determinable impairment that could reasonably cause claimant's alleged pain and symptoms. *Id.* Second, the ALJ must evaluate plaintiff's statement about the intensity and limiting effects of her symptoms to the extent that they affect plaintiff's ability to work in light of the entire record. *See also Craig*, 76 F.3d at 585; SSR 96-7p; 20 CFR §§ 404.1529(c)(4), 416.929(c)(4). Accordingly, the ALJ's credibility finding must take into account all available evidence, including the objective medical evidence of symptoms, daily activities, and aggravating factors in order to determine if such factors are consistent with or contradictory to plaintiff's subjective complaints. *Craig*, 76 F. 3d at 595-96.

The magistrate judge finds that the ALJ complied with the two-step process for evaluating plaintiff's subjective complaints about pain. As part of the residual functional capacity assessment, the ALJ first found that plaintiff's impairments could reasonably be expected to cause plaintiff's alleged symptoms and pain. R. at 24. However, the ALJ went on to find that Ms. Soghoian's statements concerning the extent and intensity of her symptoms' limiting effects were not fully credible. *Id.* The ALJ based this conclusion on his finding that plaintiff's alleged symptom limitations were partially inconsistent with the substantial weight of other record evidence including objective medical records and State Agency consultants' opinions "suggest[ing] that claimant can sustain a greater capacity than she described at the hearing." R. at 24.

**1. The ALJ did not require plaintiff to provide objective medical evidence of her pain and symptoms.**

Pursuant to 20 C.F.R. § 404.1529(a), although the ALJ must consider plaintiff's subjective complaints of pain, a claimant's complaints about pain alone are not sufficient to establish disability. Fourth Circuit precedent recognizes that "although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or severity, they need not be accepted to the extent that they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595; *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994); *Winford*, 917 F. Supp. at 404; 20 C.F.R. § 404.1529(c)(2)(explaining that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [claimant's] symptoms and the effect those symptoms…" have on plaintiff's ability to work). Furthermore, SSR 96-7p provides that "in determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms … and any other relevant evidence in the case record."

The magistrate judge finds that the ALJ did not require plaintiff to provide objective evidence of her subjective complaints about pain. The decision reflects that the ALJ carefully considered plaintiff's subjective complaints about the intensity and effects of her pain in light of the entire record including objective medical findings which he was required to do under the applicable law. R. at 21-27. For these reasons, the magistrate judge concludes that the ALJ followed the proper legal standard, when the ALJ weighed claimant's subjective complaints about her pain against other relevant evidence including plaintiff's testimony about her daily

14

activities and medical records that in part undermined plaintiff's claims of totally disabling pain.

Although the magistrate judge finds that the ALJ's assessment of plaintiff's credibility was proper, the magistrate judge does note the ALJ's use of "boilerplate language" that has been scrutinized by other courts and flagged in claimant's argument. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Hardman v. Barnhart*, 362 F. 3d 676, 679 (10th Cir. 2004). The specific wording of the ALJ's finding "that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" and other similar phrasing consists of template language frequently used in ALJ's opinions.

This template language has been noted to be problematic because it creates the impression that the ALJ incorrectly performed the residual function capacity assessment by conducting the two-step analysis on plaintiff's subjective complaints about pain independent from the RFC assessment and did not conduct a reasoned RFC analysis. *Bjornson*, 671 F.3d at 645 (explaining that a similar template appears to "get things backward" as it "implies that ability to work is determined first and then is used to determine the claimant's credibility"); *Hardman*, 362 F.3d at 679 (stating that "such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible"). However, here, when the ALJ's similar phrasing is read in the context of the entire decision, it is clear that the ALJ followed the appropriate two-step process and performed the credibility assessment as part of the overall RFC assessment. R. at 23. Moreover, the ALJ sufficiently explained in the decision what specific evidence he considered in evaluating plaintiff's credibility and appropriately cited to relevant evidence in the record that both support and contradict plaintiff's testimony in accordance with the proper legal

15

standard. R. at 22-27; *see* SSR 96-7p. In other words, while the ALJ used the unfortunate template language, the opinion as a whole demonstrates that in the words of the *Craig* case, plaintiff's statements "need not be accepted to the extent that they are inconsistent with the available evidence, including objective evidence of the underlying impairment." 76 F.3d 585 at 595.

**2. The ALJ did not mischaracterize plaintiff's testimony regarding her daily activities.**

Plaintiff's second argument is that the ALJ erroneously assessed plaintiff's subjective complaints of pain by mischaracterizing plaintiff's statements of her daily activities. Plaintiff argues that the ALJ overestimated her capabilities to perform full time work on a sustained basis. The magistrate judge finds that the ALJ did not conclude that plaintiff's stated daily activities constituted substantial gainful activity which would have resulted in a finding that plaintiff was "not disabled" at step one. Instead, the ALJ appropriately considered plaintiff's daily activities as part of the RFC assessment in step four which incorporated the ALJ's evaluation of plaintiff's work capacity and credibility.

Pursuant to 20 C.F.R. § 404.1529(c)(3)(i), claimant's daily activities are one of many factors that the ALJ considers in assessing claimant's credibility about purported symptoms and pain. Here, the ALJ in making his RFC assessment found that "claimant's activities of daily living were inconsistent with her claims of totally disabling limitations." R. at 24. In support of this determination, the ALJ references plaintiff's testimony that she lived independently from 2004 through 2007 along with other activities she performed during the relevant period. R. at 40. The ALJ specifically discussed claimant's testimony that she drove, cooked meals, shopped for groceries, and performed physical therapy activities. R. at 24; 41-42; 55-56;171-72; 56; 218; 285; 373. Caring for one's own needs of course does not equate with ability to work. However,

16

many of the daily activities listed by the ALJ have a rational bearing on the extent, intensity, and limiting effects of plaintiff's symptoms and the level of work plaintiff could perform. In consideration of the entire record, the magistrate judge finds that the ALJ did not mischaracterize plaintiff's testimony about her daily activities but properly considered plaintiff's daily activities as well as her purported limitations.

Plaintiff argues that the ALJ did not properly consider evidence in the record that plaintiff was unable to engage in any significant activity during her "bad days" when she experienced intense pain and nausea. R. at 61. Contrary to plaintiff's assertion, the ALJ acknowledged plaintiff's complaints about her pain and considered plaintiff's testimony in determining her functional limitations along with other evidence. R. at 23-24. The ALJ incorporates in his RFC discussion statements made by plaintiff "describing her pain as a gnawing like sensation that is exacerbated with stretching, lifting, and any pressure applied to the flank on the left," and her testimony that she had "bad days" when she "experienced nausea, cramping in her legs, severe abdominal pain…" *Id.* It appears to the magistrate judge that the ALJ's consideration of these limitations underlies the ALJ's conclusion that plaintiff was not able to perform rigorous work activity but only sedentary work with certain limitations tailored to her circumstances.

In accordance with SSA regulations, the ALJ properly considered plaintiff's daily activities in light of the substantial objective medical and opinion evidence strongly corroborating a finding that plaintiff's complaints of totally disabling pain were only partially credible. In general, plaintiff's diagnostic testing results were largely normal and physical examinations demonstrate that claimant was relatively "healthy" and had no significant abnormalities despite her chronic pain. R. at 209; 212-13; 229-31; 280-81; 285; 290; 298-300;

304-309; 317; 355-56; 371; 458; 470-71; 544-50.  Consistent with these medical records, the two state agency physicians opined that plaintiff did not have any disabling limitations and further found that Ms. Soghoian could perform a limited range of light work.  R. at 70-78; 475-81.  Such facts in the evidence regarding plaintiff's health condition were logically considered by the ALJ in assessing the extent of plaintiff's functional abilities.

An ALJ's specific credibility determinations should be afforded great weight especially when, as is found here, the ALJ had the opportunity to observe plaintiff at a hearing and plaintiff's alleged disability rests almost exclusively on her subjective complaints of pain.  *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984).  In review of the entire record, the magistrate judge finds that the ALJ's determination that plaintiff's subjective complaints about her pain were not fully credible is supported by substantial evidence in the record.  R. at 26.

Therefore, the magistrate judge finds that the ALJ did not err in his determination that Ms. Soghoian was not disabled because his findings were supported by substantial evidence and the correct application of the law.

## VI. RECOMMENDATION

For these reasons, the undersigned recommends that plaintiff's Motion for Summary Judgment (No. 15) be denied, and that defendant's Motion for Summary Judgment (No. 11) be granted.

## VII. NOTICE

By means of the court's electronic filing system, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation.  A failure to file timely objections to this report and

recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

February 19, 2014
Alexandria, Virginia